Case 4:12-cv-03039   Document 61   Filed in TXSD on 03/31/16   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
March 31, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARGARET MYKLEBUST, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-3039 |
| | § | |
| MCDERMOTT, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

### I.   INTRODUCTION

The plaintiff, Margaret Myklebust (the "plaintiff"), commenced the instant action against the defendants, McDermott, Inc. ("McDermott") and Metropolitan Life Insurance Co. ("MetLife") seeking a declaration from this Court that she is entitled to recover certain employer-sponsored thrift plan and life insurance benefits attributable to the decedent, John D. Drayton, as his surviving spouse.  The plaintiff has invoked this Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that the case arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*. ("ERISA").  Thereafter, MetLife filed a Counterclaim and Third-Party Complaint in Interpleader against Olivia Tallet ("Tallet"), the decedent's putative spouse.

Pending before the Court is the plaintiff's motion for summary judgment.  (Dkt. Nos. 39 – 48).  Tallet has filed a response in opposition to the plaintiff's motion, (Dkt. No. 51), and the plaintiff has filed a reply (Dkt. No. 52).  McDermott and MetLife have also filed a response, citing no opposition to the plaintiff's motion for summary judgment.  (Dkt. No. 50).  After having carefully considered the arguments of counsel, the motion, the response, the reply and the applicable law, the Court determines that its previous order denying the plaintiff's motion for

summary judgment should be **VACATED**; and the plaintiff's motion for summary judgment should be **GRANTED**.

## II.   FACTUAL BACKGROUND

This case arises out of competing claims for insurance benefits between two women, each of whom claims to be the "lawful" surviving spouse of John D. Drayton (the "decedent"), a deceased former employee of a McDermott affiliated company. The plaintiff and Tallet have filed a Joint Statement of Facts stipulating to the following undisputed facts:

- John D. Drayton (the "decedent") died on January 1, 2012, in Singapore, Republic of Singapore.

- The decedent was employed by a McDermott affiliated company on July 17, 2007, and remained an employee until his death.

- The decedent and the plaintiff were married on July 25, 2002, in Winnsboro, Fairfield County, South Carolina.

- The decedent fraudulently obtained an Agreed Final Decree of Divorce in Cause No. 2006-03166 (the "divorce proceeding") in the 245th Judicial District Court of Harris County, Texas dated October 18, 2006.

- The decedent and Tallet participated in a marriage ceremony on July 2, 2007, in Harris County, Texas.

- After July 2, 2007, on at least two occasions, the decedent represented to McDermott that Tallet was his spouse.

- A Judgment Granting Bill of Review, dated September 14, 2012, was issued in the divorce proceeding holding the decedent's Agreed Final Decree of Divorce void.

- The divorce proceeding was dismissed by an Order dated September 14, 2012.

- As an employee of a McDermott affiliated company, the decedent was a participant in the McDermott Thrift Plan and maintained life insurance benefits payable under the Group Insurance Plan for Employees of McDermott, Incorporated and Participating Subsidiary and Affiliated Companies (the "Life Insurance Plan").

- The Life Insurance Plan is governed by ERISA. MetLife is the claims administrator of the Life Insurance Plan and issuer of the group policy that funds the benefits.

- Following the decedent's death, both the plaintiff and Tallet made claims, as surviving spouse, to the McDermott Thrift Plan benefits attributable to the decedent as well as to the Life Insurance Plan benefits payable by reason of the decedent's death.

- Kathleen Nimmo, McDermott's custodian of records, testified: "If John D. Drayton had made a beneficiary designation under any McDermott benefit plan in which he was a participant, the designation should be contained in his employment file."

- The decedent's employment file was examined and did not contain a beneficiary designation for either the McDermott Thrift Plan or the Life Insurance Plan.

- McDermott has no beneficiary designation in its possession relative to the McDermott Thrift Plan benefits that are the subject of this suit.

- McDermott has no application form, enrollment form, renewal form, or beneficiary designation form in its possession relative to the McDermott Life Insurance Plan benefits, which are the subject of this suit.

- After a trial on the merits, an Heirship Judgment was issued in Cause No. 410,987, *In Re: Estate of John D. Drayton, Deceased* by Probate Court No. 3 of Harris County, Texas naming the plaintiff as the decedent's lawful spouse, their daughter, Liv Jewel Drayton, as his minor child, and Tallet, as the decedent's putative spouse.

- The thrift plan benefits are described in the McDermott Thrift Plan.

- The Life Insurance Plan benefits are described in two documents: (1) the McDermott Investments, LLC Benefit Plan Certificate - " Your Benefit Plan"; and (2) the Life Insurance Benefit Summary Plan Description.

The following additional facts are drawn from the uncontested evidence contained in the record now before this Court:

- On October 11, 2012, the plaintiff filed the instant declaratory judgment action against McDermott and MetLife seeking to collect Thrift Plan benefits and Life Insurance Plan benefits as the decedent's lawful surviving spouse.

- Tallet, the decedent's putative spouse as declared by the Judgment Declaring Heirship issued by Harris County Probate Court No. 3, filed an unopposed motion to intervene in this action on December 13, 2012. (*See* Dkt. No. 21).

- On December 17, 2012, this Court entered an Order granting Tallet's motion to intervene. (*See* Dkt. No. 23).

- Shortly thereafter, Tallet filed claims in interpleader against MetLife and McDermott. (Dkt. Nos. 22 & 24).

- On January 30, 2013, MetLife filed a motion to deposit the Life Insurance Plan benefits, in the amount of $300,000, plus applicable interest, into the registry of the Court and for dismissal of it and McDermott with prejudice, arguing that it is unable to determine the respective rights of the plaintiff and Tallet under the Life Insurance and Thrift Plans and faces multiple liability in the event it pays the wrong party. (Dkt. No. 30). It also sought dismissal of Tallet's claims in interpleader. (Dkt. No. 31).

- Subsequently, this Court, entered an Order granting MetLife's motion to deposit funds, motion for discharge and motion to dismiss Tallet's claims in interpleader. (*See* Dkt. Nos. 35 & 36).

- On or about March 6, 2013, MetLife deposited $301,660.27, the proceeds of the Life Insurance Plan, into the registry of the Court.

The plaintiff now moves for a summary judgment, asserting that she is entitled to the proceeds payable under both the Life Insurance and Thrift Plans as the decedent's *lawful* surviving spouse.

### III. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the district court of the basis for its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumber, Ltd.*,

338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed.2d 127 (1994)). It may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action, . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536,

540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court is not permitted to "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (quoting *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 – 52 (1986)).

## IV. ANALYSIS AND DISCUSSION

### A. Benefits Payable Under the Life Insurance Plan

The plaintiff moves for a summary judgment on the Life Insurance Plan, asserting that she, as the decedent's *lawful* surviving spouse, is entitled to the proceeds of the Life Insurance Plan and Tallet's arguments regarding Texas property law are preempted by ERISA. Tallet, in opposition, argues that the Court should apply Texas' putative spouse doctrine and award the benefits to her because Texas holds that a putative wife is entitled to the same rights in the property acquired during her marital relationship as if she were a lawful wife. As a consequence, Tallet maintains that the benefits contained in the Court's registry should be paid to the decedent's estate as set forth in the McDermott Life Insurance Benefit Summary Plan Description ("McDermott SPD"). Tallet further contends that a summary judgment is not appropriate in this case because genuine issues of material fact exist, *inter alia*, as to: (1) whether the decedent designated a beneficiary for either his employer-sponsored insurance benefits or

thrift plan; (2) whether the McDermott SPD or Certificate of Insurance determines who is the plan's beneficiary; and (3) the meaning of the term "spouse" as the term is used in the "facility of payment" clauses contained in both the McDermott SPD and Certificate of Insurance.

The parties do not dispute that the Life Insurance Plan is governed by ERISA. ERISA's preemption provision mandates that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). It is well-established that ERISA's preemption is very broad and was intended by Congress to be deliberately expansive. *Brandon v. Travelers Ins. Co.*, 18 F.3d 1321, 1325 (5th Cir. 1994), *cert. denied*, 513 U.S. 1081, 115 S. Ct. 732, 130 L. Ed.2d 635 (1995); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45-46, 107 S. Ct. 1549, 1551 - 52, 95 L. Ed.2d 39 (1987). A state law has been found to "relate to" an employee benefit plan, within the meaning of the statute, "'if it has a connection with or reference to such a plan' . . . even where the state law is not specifically intended to regulate ERISA covered plans." *Brandon*, 18 F.3d at 1325 (quoting *Shaw v. Delta Air Lines*, 463 U.S. 85, 96 - 97, 103 S. Ct. 2890, 2900, 77 L. Ed.2d 490 (1983)); *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139, 111 S. Ct. 478, 482 - 83, 112 L. Ed.2d 474 (1990). The Fifth Circuit, like other circuits who have considered the issue, has determined that the designation of a beneficiary sufficiently "relates to" an employee benefit plan such that any state law governing such designation of beneficiary is necessarily preempted. *See Dial v. NFL Player Supplemental Disability Plan*, 174 F.3d 606, 611 (5th Cir. 1999); *Brandon*, 18 F.3d at 1325. As a consequence, when attempting to resolve the competing claims presented in this case, this Court must apply either the statutory language of ERISA, or if no answer can be found there, federal common law which, if not clear, may be guided by applicable state law. *Brandon*, 18 F.3d at 1325.

In this case, section 1104(a)(1)(D) of ERISA is instructive and requires that a plan administrator discharge its duties with respect to the plan "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter." 29 U.S.C. § 1104(a)(1)(D). Since ERISA mandates that the terms of the plan will control distribution, this Court's substantive analysis must necessarily originate with the text of the applicable employee benefit plan. *See* 29 U.S.C. § 1102(b)(4) (ERISA requires that an employee benefit plan shall "specify the basis on which payments are made to and from the plan"); 29 U.S.C. § 1002(8) (ERISA commands that a plan fiduciary make payments to the beneficiary who is "designated by a participant, or by the terms of an employee benefit plan."); *see Burnham v. Guardian Life Ins. Co. of America*, 873 F.2d 486, 489 (1st Cir. 1989) (Courts must accord the "natural meaning" to the "straightforward language in an ERISA-regulated insurance policy."; *see also* 4 Couch on Insurance, § 58:4 ("The rights of contending parties to the proceeds of an insurance policy, each claiming to be the lawful beneficiary thereof are . . . determined by a construction and interpretation of the contract itself.").

Here, McDermott's Benefit Plan Certificate sets forth the terms of the life insurance policy. Specifically, McDermott's Benefit Plan Certificate, dated July 1, 2010, provides, in relevant part, the following:

> If there is no Beneficiary designated or no surviving designated Beneficiary at Your death, We may determine the Beneficiary to be one or more of the following who survive You:
>
> • Your Spouse
>
> • Your child(ren);
>
> • Your parent(s); or
>
> • Your sibling(s).

(Dkt. No. 43, Ex. H at 41; *see also* Dkt. No. 55, Ex. L at 41). The term "spouse" within the meaning of the McDermott Benefit Plan Certificate is defined to mean "[the decedent's] *lawful* spouse." (Dkt. No. 43, Ex. H at 21; *see also* Dkt. No. 55, Ex. L.).

The McDermott Life Insurance Benefit SPD provides, in relevant part, the following:

### No Beneficiary at Your Death

> If there is no Beneficiary at your death for any amount of Life Benefits payable because of your death, that amount will be paid to your estate. However, the Plan may instead pay all or part of that amount to one or more of the following persons who are related to you and who survive you:
>
> 1. spouse;
> 2. child;
> 3. parent;
> 4. brother and sister.
>
> Any payment will discharge the Plan's liability for the amount so paid.

(Dkt. No. 44, Ex. I at 13.).

A plain reading of the McDermott SPD suggests that it conflicts with the terms of the McDermott Benefit Plan Certificate, as the McDermott SPD authorizes the payment of benefits to the decedent's estate, with the option of rendering payment to the decedent's spouse in the first class of surviving beneficiaries, where the decedent had not designated a beneficiary at his death. The terms of the McDermott SPD, however, are not necessarily controlling and "do not themselves constitute the terms of the plan." *See Cigna Corp. v. Amara*, 131 S. Ct. 1866, 1877 – 78 (2011) (reasoning that the summary plan documents, although important, are intended to give information *about* the plan but do not constitute the plan). This rule is supported by the plain language contained in the McDermott SPD. Specifically, the McDermott SPD states, in pertinent part, the following:

> This Summary Plan Description provides a summary of the Life Benefits available to Eligible Employees.  Full details of the Plan are contained in the official Plan documents and insurance contracts underlying the Plan. *If a provision described in this Summary Plan Description differs from the provisions of the applicable Plan document and/or insurance contract, the Plan document and/or insurance contract prevails*.

(Dkt. No. 44, Ex. I at 19.) (emphasis added).

Generally, based on a plain reading of the documents at issue in this case, in the absence of a beneficiary designation, the plaintiff, as the decedent's "lawful surviving spouse," would be entitled to the decedent's life insurance proceeds payable under the McDermott Life Insurance Plan.  Equally so, Tallet does not qualify as the decedent's "lawful surviving spouse" under the Plan as her marriage to the decedent was declared void—like the decedent's fraudulently-obtained divorce.  Additionally, there is simply no evidence before this Court that the decedent intended to designate Tallet as the beneficiary of his Life Insurance Plan.  Contrary to Tallet's assertion, the fact that the decedent listed her as his spouse and as a dependent on his 2012 McDermott Confirmation Statement does not amount to evidence that he intended to make her the beneficiary of his McDermott Life Insurance Plan nor does it constitute substantial compliance with McDermott's change of beneficiary provisions so as to make her a designated beneficiary.  Moreover, even if the decedent intended to make Tallet the beneficiary of his McDermott Life Insurance Plan, his subjective intent is not enough to support Tallet's claim to his life insurance proceeds payable under the McDermott Life Insurance Plan.  Tallet's self-serving affidavit, without more, is insufficient to raise a genuine issue of material fact for trial in light of the unambiguous language of the Plan declaring spouse to mean and/or include the decedent's "*lawful* spouse."

McDermott's Benefit Plan Certificate requires payment of the proceeds thereunder to the decedent's "lawful spouse" when no beneficiary has been designated.  Records maintained by

McDermott indicate that the decedent did not designate a beneficiary for his McDermott Life Insurance Plan. The decedent fraudulently obtained a divorce from the plaintiff which was subsequently rendered void. Tallet's subsequent marriage to the decedent was also declared void. The plaintiff, therefore, is entitled to receive the insurance proceeds payable under the McDermott Life Insurance Plan and deposited into this Court's registry by MetLife.

B.     **Benefits Payable Under the Thrift Plan**

The plaintiff also seeks a summary judgment that she, as the decedent's surviving spouse, is entitled to payment of the Thrift Plan benefits attributable to the decedent and maintained by McDermott. The plain language of the McDermott Thrift Plan[1] provides, in relevant part, as follows:

> 13.1     DISTRIBUTION IN THE EVENT OF DEATH
>
> If a Participant dies while still employed by the Employer or while continuing to have a vested interest in the Plan after retirement or termination of employment, the value of his Participant Account shall be paid in a single lump sum in cash or stock, as applicable, to his Beneficiary designated pursuant to Section 13.2, or if none survives him or if none has been named, to his estate. *However, in the case of a married Participant, where no written designation has been made pursuant to Section 13.3, such distribution shall be made to the surviving spouse*.

(Dkt. No. 47, Ex. J at 60) (emphasis added).

As set forth above, the plaintiff, as the decedent's lawful surviving spouse under ERISA, is entitled to all of his accrued benefits under the McDermott Thrift Plan. *Boggs v. Boggs*, 520 U.S. 833, 843, 117 S. Ct. 1754, 1762, 138 L. Ed. 2d 45 (1997) ("ERISA's solicitude for the

---

[1] ERISA, as amended by the Retirement Equity Act of 1984 ("REA") requires that defined benefit plans and money purchase plans include an annuity payable to a nonparticipant surviving spouse upon the death of a participant, unless a written election to waive the survivor annuity is signed by both the participant and his spouse or an alternate beneficiary is designated in writing by both parties. *See* 29 U.S.C. § 1055(b)(1)(C).

economic security of surviving spouses would be undermined by allowing a predeceasing spouse's heirs and legatees to have a community property interest in the survivor's annuity. Even a plan participant cannot defeat a nonparticipant surviving spouse's statutory entitlement to an annuity.")

## V.     CONCLUSION

Based on the foregoing, the plaintiff's motion for summary judgment is **GRANTED**. All other relief not expressly granted herein is DENIED.

It is so **ORDERED**.

SIGNED on this 31st day of March, 2016.

_____
Kenneth M. Hoyt
United States District Judge